.CANNELLA, Judge.
Defendant, Steven L. McCullough, appeals from the trial court judgment which partitions the community of acquets and gains formerly existing between him and Plaintiff, Cindy R. McCullough. For the reasons which follow, we affirm in part, amend in part and render judgment.
The parties were married on September 27, 1996 and physically separated on September 20, 1998. Plaintiff filed a Petition for Divorce on September 28, 1998. A final judgment of divorce was rendered on April 28, 1999, effectively terminating the community on the date which the petition *126 was filed, September 23, 1998. On June 26, 2000, Plaintiff filed a Petition for Partition. During the existence of their marriage, the parties acquired various assets and liabilities which comprised their community of acquets and gains and some of the values were in dispute. Additionally, Defendant had been involved in an automobile accident during the marriage wherein he sustained personal injuries. The matter was settled on April 1,1999 for the lump sum amount of $105,000. How much, | Bif any, of the settlement proceeds comprised part of the community was at issue. Finally, there was a dispute over several claims for reimbursement that Plaintiff had made regarding separate funds she allegedly had used on community obligations. On February 16, 2001, following trial, the trial court resolved the value disputes and reimbursement claims and rendered judgment. It is from this judgment that Defendant appeals and Plaintiff has answered the appeal.
On appeal, Defendant assigned four errors. First, he argues that the trial court erred in partitioning his personal injury settlement proceeds and finding that $87,729.88, the amount of his medical bills claimed in his personal injury suit, comprised a community asset, without taking into consideration which, if any, bills were actually paid by the community.
La C.C. art. 2344 provides:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
Defendant argues that for a portion of his personal injury settlement to be considered community, it must be proven that the community actually incurred the expenses, that is, that the community paid the bills. In other words, if, as he alleges here, his medical bills were paid from his separate estate, by his insurer or advanced by his attorney and deducted from his settlement proceeds, then he does not owe the community for the amount of those bills, because the 1 ¿community incurred no debt as relates to those bills. The article does not dictate that the part of the settlement equal to the amount of the medical bills is considered community property, but rather, it provides that the part of the settlement “attributable to expenses incurred by the community” shall be considered community property. We find merit in Defendant’s argument.
As noted in The Louisiana Civil Law Treatise on Matrimonial Regimes, Spaht & Hargrave, Vol 16, § 3.21, p. 98, the purpose of the second part of article 2344 is to prevent a spouse from increasing a separate estate at the expense of the community. In other words, if the community pays the expenses for the injury, like medical bills, then the community should be reimbursed from any damages obtained from the personal injuries which would otherwise be his separate property, so that the injured spouse’s separate estate is not increased by the corresponding loss to the community. The recovered amount, in repayment for these community expenditures, should not go to the injured spouse’s separate estate. We find that the reverse is also valid. If the community does not pay the expenses resulting from the injury, *127 like the medical bills, then the community is owed no reimbursement.
Applying the above herein, we find merit in Defendant’s argument that the trial court erred in awarding, as a community asset, the amount of the medical expenses related to his injury, without regard to whether the medical bills were actually paid by the community. In doing so, the trial court effectively increased the community at the expense of Defendant’s separate estate. Upon review of the record, we find that there was no evidence presented to show that the community paid any of Defendant’s medical bills. To the contrary, he testified that none of his medical bills were paid by the community. He testified, with supporting |Bexhibits, that some of his medical bills were paid by his insurer and some of his medical bills were paid by his attorney and/or guaranteed by his attorney and deducted from his settlement proceeds before he was given the remainder of the settlement funds. No community funds were used to pay his medical bills. Plaintiff testified that she thought some co-payments of $10 per visit might have been paid by the community and perhaps some prescriptions, but she could not state an amount and presented no proof to support these assertions. Further, no community debt representing any unpaid medical expenses was listed in Plaintiffs sworn descriptive list. Therefore, based on the record, we find that the trial court erred in finding that the amount of the medical bills resulting from Defendant’s accident ($37,729.88) was a community asset and in awarding Plaintiff an amount equal to & of that amount. Further, we set aside that award of $18,586.81 to Plaintiff.[1]
Next Defendant argues that the trial court erred in awarding Plaintiff $1,017 as reimbursement on her claim that $2,034 of her separate funds were used for community expenses. Defendant argues that she failed to meet her burden of proof on this expenditure. We disagree.
Plaintiff testified that she deposited a separate funds check of $2,034 into the community checking account, which was received for a damage claim to her separate property. She further testified that the funds were then spent on a $1,900 bill for tires and rims for the community vehicle and the remainder was used to pay a community debt for a trip which the parties took. This testimony was not contradicted. Thus, the record supports a finding that $2,034 of | ^Plaintiffs separate funds were used to pay community expenses. We find no error in the trial court order that Ms. McCullough be reimbursed one-half of this amount, which equals $1,017.
Next, Defendant argues that the trial court erred in awarding Plaintiff $1,425 reimbursement, on her claim that $2,850 of her separate funds were used for community expenses. He again argues that she failed to meet her burden of proof on this expenditure. We disagree.
Plaintiff testified that she deposited into the community checking account a check in the amount of $4,522, which was her separate funds, received in payment for the sale of her separate property. She further testified that a portion of the funds, $2,850, was then spent on the purchase of a community vehicle. This testimony was essentially uncontradicted. Thus, the record supports a finding that $2,850 of Plaintiffs separate funds were used on a community *128 expense. We find no error in the trial court order that Plaintiff be reimbursed one-half of this amount, which equals $1,425.
Next Defendant argues that the trial court erred in awarding Plaintiff $3,800 reimbursement, on her claim that $7,000 of her separate funds were used for community expenses. He argues that she failed to meet her burden of proof on this expenditure. We agree.
Neither the judgment nor the descriptive list show any itemization relating to the purpose of this claim. Moreover, the record shows, contrary to Plaintiffs claim, that she only had $1,672 of her separate funds in the checking account after the payments for the acquisition of the community vehicle, tires, rims and vacation.
[7When separate funds are commingled with community funds, as they were here, in a community checking account where the parties also deposited their pay checks, the money is presumed to be community. To claim these funds as separate or to be awarded reimbursement for the expenditure of the separate funds on community obligations, the burden of proof rests on the person seeking reimbursement of the funds as separate. In addition to other itemized claims, Plaintiff asserts a non-itemized claim in her descriptive list for reimbursement of $7,000 of her separate funds which she claims to have spent on community obligations. We find that the record does not support this reimbursement claim and the trial court erred in awarding reimbursement to her in the amount of $3,800 on this claim. That award is set aside.
Next, Defendant argues that the trial court erred in valuing the community vehicle, a 1990 Chevrolet Suburban, at $8,000.
The evidence indicates that the vehicle was purchased in 1996 by the parties for the total price of $2,850. Defendant retained possession of the vehicle following the separation and divorce. In 1998, he donated the vehicle to a charitable organization. He received a letter from the organization specifying a charitable donation of the vehicle with a stated value of $8,000. At trial Defendant testified that the National Automotive Dealer Association (NADA) Blue Book (Blue Book) value for a vehicle of that year and type, with 150,-000 miles on it at the time of the donation, was $8,000. However, the vehicle which he donated had 347,741 miles. No other values relative to this vehicle were introduced by either party. The trial judge stated that he did not think that the vehicle was worth $8,000. However, since Defendant had received a donation letter so valuing the vehicle, he would so assess it. Based on the record, we find |Rthat the trial court erred in placing an $8,000 value on the vehicle just because of the letter of donation. While Defendant may have some other problems with his donation claim, the record does not support the valuation of the vehicle in this community property dispute. Rather, since the Blue Book value for the vehicle was $8,000 based on 150,000 miles and this vehicle had 347,741 miles, we reduce the value of the vehicle to $6,000.
Next, Defendant argues that the trial court erred in failing to award him certain reimbursements, totaling $5,935, for community funds used to enhance Plaintiffs separate property.
Plaintiff argues that she acknowledged payment of certain bills relating to her separate property from the funds which she received from a $10,000 loan that she made from Hibernia Bank. She also testified at length regarding this loan and itemizing how the loan was spent. To the *129 extent that funds were used on her separate property, she accepted this portion of the loan as her separate debt. Her testimony on this was not contradicted. Thus, the record does not support Defendant’s claim for reimbursement to the community for the funds used on Plaintiffs separate property.
Finally, Defendant argues that the trial court erred in imposing a contempt related fíne payable directly to Plaintiff instead of to the trial court. We agree. In Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5th Cir.3/10/98), 711 So.2d 308, writs denied, 98-0990 (La.5/29/98), 720 So.2d 343, certiorari denied, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999), we held that in a contempt proceeding the fíne must be payable to the court and not to the litigant. Therefore, we amend the contempt fine of $500 made payable to Plaintiff directly and order it payable to the court.
laPlaintiff answered the appeal and raises three issues. First, she argues that the trial court erred in not awarding her reimbursement for the community portion of the Hibernia Bank loan that she paid with her separate funds in the amount of $384. We agree.
Plaintiff testified as to what portion of the Hibernia Bank loan was used to pay her separate debts, Defendant’s separate debts and some community obligations. She also testified, and it was uncontradict-ed, as to what amounts of her separate funds were used to pay off the community portion of the loan and the portion of the loan used to pay off Defendant’s separate debts. She had documentary evidence to corroborate her testimony. We find that the record supports her claim here for reimbursement of $384 of her separate funds used to pay a community debt. The trial court judgment is amended to award Plaintiff an additional $192 as reimbursement for one half of her separate funds used to pay the community portion of the Hibernia Bank loan.
Next, Plaintiff argues that the trial court erred in failing to award her reimbursement for the part of the funds from the Hibernia Bank loan that were used to pay Defendant’s separate debts and which she repaid with her separate funds in the amount of $603.90. For the reasons stated in the preceding argument, we agree. The trial court judgment is amended to award Plaintiff an additional $603.90 as reimbursement for her separate funds used to pay the portion of the Hibernia Bank loan used for Defendant’s separate debts.
Finally, Plaintiff argues that the trial court erred in ruling on the enforceability of an agreement between the parties after termination of the community. The parties entered into an agreement following the termination of the community which provided that Defendant would pay certain expenses of | inPlaintiff, allegedly in lieu of spousal support, and certain amounts would be repaid to him upon the sale of her separate property.
At the community property partition, Defendant argued that his reimbursement of these expenditures should be addressed therein. Plaintiff argued, to the contrary, that the expenses which Defendant paid were not community expenses and, therefore, not part of the community property partition. In agreeing with Plaintiffs position and refusing to award the reimbursements, the trial court used language which might be viewed as addressing the enforceability of the agreement. Plaintiff argues herein that the statement by the trial court should not have been made because the validity and enforceability of the document was not being litigated. We agree.
The validity and enforceability of the document was not before the trial court in *130 these proceedings and any reference to that effect by the trial court in its judgement is vacated.
Accordingly, for the reasons stated above the trial court judgment is amended in part, vacating the finding that the sums pertaining to the medical expenses of Defendant’s personal injury for which he received a lump sum settlement were community property and deleting the awards attendant to that finding, deleting the reimbursement award to Plaintiff of $3,800, deleting any reference to the validity or enforceability of the agreement the parties entered into after the termination of the community, reducing the value placed on the community vehicle from $8,000 to $6,000, ordering that the contempt fine be payable to the court and not to the party, and adding reimbursement awards to Plaintiff of $192 and $603.90 for separate funds which she used to pay a |n community debt and Defendant’s separate debt, respectively. In all other respects, the judgment is affirmed. Costs of appeal are to be borne by the parties.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.

. Coincident with this holding, we also set aside the correlated award to Defendant for $18,586.81 and the reimbursement award to him from Plaintiff in the amount of $7,434.72 representing ]4 of the 40% attorney fee for recovering the medical expenses.